# UNITED STATES DISTRICT COURT
for the
Middle District of Tennessee

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>TA SILVER APPLE IPHONE SE MODEL A1662<br>BEARING IMEI: 355433073225280 CURRENTLY<br>LOCATED AT THE ATF NASHVILLE OFFICE | Case No. 22-mj-1008 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the  Middle  District of  Tennessee , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(g)(1) | Possession of a firearm by a convicted felon |
| 18 U.S.C. Section 924(c) | Possession of a firearm in furtherance of a drug trafficking crime |
| 21 U.S.C. Section 841(a)(1) | Possession of a controlled substance with the intent to distribute it |

The application is based on these facts:

See attached affidavit in support of the search warrant

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Jonathan Jones
*Applicant's signature*

ATF TFO Jonathan Jones
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
 telephone  *(specify reliable electronic means)*.

Date: February 7, 2022

*[signature: Barbara D. Holmes]*
*Judge's signature*

City and state: Nashville, Tennessee

Magistrate Judge Barbara D. Holmes
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SILVER APPLE IPHONE SE MODEL A1662 BEARING IMEI: 355433073225280 THAT IS CURRENTLY LOCATED AT ATF NASHVILLE OFFICE - 302 INNOVATION DRIVE, FRANKLIN, TN 37067. | Case No.    22-mj-1008<br><br>Magistrate Judge Holmes |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Jonathan G. Jones, first being duly sworn, upon my oath do state:

1. I am an investigative or law enforcement officer of the United States within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since July 2021. I am also a Detective with the Metropolitan Nashville Police Department (MNPD), where I have been employed since 2012. My official duties and responsibilities include the investigation of firearms and narcotics trafficking offenses, in violation of Title 18 and Title 21, of the United States Code, and I have received specialized training in this regard.

2. I am currently assigned to the Nashville Field Division. As a TFO with the ATF and a Detective with MNPD, I have conducted firearms, narcotics, and drug-related investigations involving violations of international, federal, and state narcotics laws. Currently, I am responsible for investigating violent crimes that involve the unlawful possession, distribution and use of firearms and illegal narcotics, the possession with the intent to distribute controlled substances, the distribution of controlled substances, the use of communication facilities to further these offenses, the related crime of laundering monetary instruments, all in violation of Title 21, United

States Code, Sections 841(a)(1), 843(b), 846, and 952, and Title 18, United States Code, Sections 1956 and 1957. In conducting these investigations, I have used a variety of investigative techniques and resources, which include, but are not limited to, conducting physical and electronic surveillance, monitoring court-authorized wiretaps, and managing the use of cooperating sources ("CS" or "informants"). Through these investigations, my training and experience, in conjunction with conversations with other Agents, as well as other law enforcement personnel, I have become familiar with the methods used by narcotic traffickers, including, but not limited to, the methods of importing, packaging, transferring and distributing narcotics, the use of cellular telephones, the use of numerical codes, text messages, code words and other methods of avoiding detection by law enforcement, as well as the types and amounts of profits made by drug traffickers and the methods, language and terms that are used to disguise the source and nature of the profits from their illegal narcotics dealing. I also have extensive experience in debriefing defendants, co-conspirators, witnesses, and informants who have been involved in unlawful drug trafficking activities.

3. This statement is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. I make this statement in support of a warrant to search of a Silver Apple iPhone SE Model A1662 bearing IMEI 355433073225280, (hereinafter the SUBJECT DEVICE).

5. The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

### TRAINING, BACKGROUND, AND EXPERIENCE

6. As a result of my training and experience, I am familiar with how various drugs are used and the typical distribution and trafficking methods used by drug dealers and traffickers.

7. My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following: my own involvement in prior drug investigations and searches during my career as a law enforcement officer, as previously described as described in my training and qualifications portion of this affidavit; my involvement in debriefing confidential informants and cooperating individuals in prior investigations, as well as what other agents and police officers have advised me when relating the substance of their similar debriefings and the results of their own drug investigations, more particularly described below; and other intelligence information provided through law enforcement channels, as set out below.

## **PROBABLE CAUSE**

8. On Wednesday January 26, 2022, Metropolitan Nashville Police Department (MNPD) Specialized Investigations Division (SID) Detectives learned that Jeremiah PETERKIN had an active outstanding arrest warrant out of Davidson County, Tennessee for Aggravated Assault with a Deadly Weapon. Detectives verified that the warrant was in fact valid and in hand with the Davidson County Sheriff's Office before going to his last known address at an apartment on Hillside Avenue, in Nashville, Tennessee.

9. Detectives arrived at that location at approximately 12:00 p.m. and observed a white 2017 Volkswagen Jetta bearing TN Tag: 5X87U0 parked in the apartment parking lot near the front door to the apartment listed as PETERKIN's last known address. Detectives immediately recognized that vehicle as one that PETERKIN frequently drove and that is registered to his significant other, D.F.

10. Detectives conducted surveillance the aforementioned area utilizing unmarked MNPD vehicles and both MNPD and Tennessee Highway Patrol (THP) helicopters. At approximately 4:45 p.m., Detective D. Tidwell observed PETERKIN exit the front door of the Hillside Avenue apartment and get into the driver seat of the previously mentioned Volkswagen Jetta. PETERKIN remained in the driver seat for a short time before exiting, going to the rear passenger side of the vehicle, the trunk, and then finally returning to the driver seat. PETERKIN then drove away from that location as the only occupant of the Jetta.

11. Detectives followed PETKERIN in the Jetta until he parked at a gas pump at the gas station located on 8th Avenue South in Nashville, Tennessee which is within the Middle District of Tennessee. Detectives blocked the Jetta in and took PETERKIN into custody. While taking PETERKIN into custody, Detectives noted the obvious odor of marijuana coming from within the vehicle and observed what appeared to be a plastic baggie of marijuana and a marijuana cigar in plain view in the cup holder ash tray between the two front seats of the vehicle.

12. A search of PETERKIN's person yielded a firearm holster, a plastic baggie that contained a blue powder substance, and a plastic baggie containing a small amount of what appeared to be marijuana.

13. During his arrest, PETERKIN made several unprovoked statements about his "girl" wearing his pants and leaving a holster in them. He also indicated that he had just received a phone call from her and she told him that her gun was in the car.

14. Detectives decided had the Jetta towed and sought a search warrant from a Davidson County (TN) General Sessions Judge to search the vehicle for firearms and narcotics. Detectives conducted a quick inventory of the vehicle prior to it being towed.

15. Detectives conducted a field test on the blue powder recovered from PETERKIN's person. The powder field tested positive for fentanyl and weighed approximately two (2) grams in the packaging.

16. Detective J. Miller authored the vehicle search warrant, and it was signed by Davidson County (TN) General Sessions Judge Lynda Jones. During the search, Detectives recovered and/or observed a Glock 23 .40 caliber handgun with a round in the chamber and a magazine inserted which contained an additional twelve (12) rounds (found under the arm rest in the center console); approximately four (4) grams of marijuana in a purple bag (found in the center console cup holder ash tray); a marijuana cigar (found in the center console cup holder ash tray), approximately nineteen (19) grams of an unidentified white powdery substance (found under the arm rest in the center console); a wallet containing PETERKIN's TN ID (found under the arm rest in the center console where the handgun and white powder were also located); a set of digital scales (found in the driver floorboard), the SUBJECT DEVICE (found in the front passenger seat), and a folded $20.00 bill containing white powder (found in the front passenger seat).

17. A records check revealed that PETERKIN is a two (2) time convicted felon having been convicted in 2011 of Burglary, in Davidson County (TN) Criminal Court Case Number 2010-I-151 and was sentenced to three (3) years imprisonment and also in 2016 of Weapon – Felon in Possession of a Handgun, in Davidson County (TN) Criminal Court Case Number 2016-A-30 and sentenced to one (1) year imprisonment.

18. The SUBJECT DEVICE is currently in the lawful possession of the Bureau of Alcohol, Tobacco, Firearms and Explosives. It came into evidence while ATF might already have all necessary authority to examine the SUBJECT DEVICE, I seek this additional warrant out of

an abundance of caution to be certain that an examination of the SUBJECT DEVICE will comply with the Fourth Amendment and other applicable laws.

19. The SUBJECT DEVICE is currently in storage at ATF Nashville, 302 Innovation Drive, Franklin, Tennessee. In my training and experience, I know that the SUBJECT DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT DEVICE first came into the possession of the ATF.

## **TECHNICAL TERMS**

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading

information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

21. Based on my training, experience, and research, I know that the SUBJECT DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the SUBJECT DEVICE.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the SUBJECT DEVICE to human inspection in order to determine whether it is evidence described by the warrant.

25. *Manner of execution.* Because this warrant seeks only permission to examine a SUBJECT DEVICE already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICE described in **Attachment A** to seek the items described in **Attachment B**.

## ATTACHMENT A—Device to be Examined

The property to be searched is **Subject Device** and is defined as the following device and any storage media contained therein:

|  | Make and Description | Identifying Number(s) | Where Recovered |
|---|---|---|---|
| Subject Device | Silver Apple iPhone SE Model A1662 bearing IMEI: 355433073225280 (ATF Property Item Exhibit #00004 under ATF Case 776075-20-0050) | IMEI: 355433073225280 | Subsequent to a State search warrant in the center console of a 2017 Volkswagen Jetta bearing TN Tag: 5X87U0 that had been driven by Jeremiah PETERKIN in Nashville, Davidson County, TN. |

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B—Items to be Seized

1. All records on the SUBJECT DEVICE described in Attachment A that relate to violations of Title 18, United States Code, Section 922(g)(1), Title 18, United States Code, Section 924(c) and Title 21, United States Code, Sections 841(a)(1) and 846, including:

    a. photos of firearms, or ammunition;

    b. messages and/or discussions – via text messaging or other platform – regarding firearms, ammunition, or illegal narcotics;

    c. lists of customers and related identifying information;

    d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    e. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    f. any information recording subject's schedule or travel;

    g. all bank records, checks, credit card bills, account information, and other financial records.

    h. any and all communication between parties via SMS, MMS, email, or other chat applications.

    i. any and all photographs, video or audio files.

2. Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.